UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD PLOTZKER,

                            Plaintiff,

            v.

KIPS BAY ENDOSCOPY CENTER, LLC;
and KIPS BAY ANESTHESIA, P.C.,

                            Defendants.

Case No.: 12-CV-09255 (GBD)

**MEMORANDUM OF LAW IN SUPPORT OF KIPS BAY ENDOSCOPY CENTER, LLC; and KIPS BAY ANESTHESIA, P.C.'S, MOTION FOR SUMMARY JUDGMENT**

NIXON PEABODY LLP

Thomas M. Mealiffe
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500
Fax: (516) 832-7555
tmealiffe@nixonpeabody.com
*Attorneys for Defendants*

Dated: October 24, 2016

**Table of Contents**

Page

Table of Authorities ...................................................................................................... ii

Preliminary Statement.................................................................................................... 1

Statement of Fact & Procedural History ....................................................................... 3

Argument ....................................................................................................................... 6

I.    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF
      RETALIATION UNDER 31 U.S.C. § 3730(h)(1) OR N.Y. STATE FIN.
      LAW § 191 ............................................................................................................ 8

      A.    Plaintiff did not Engage in Protected Conduct under the Statute ............ 9

            1.    Plaintiff did not Engage in an Investigation Prior to the HCI
                  Mock Survey ................................................................................ 10
            2.    Plaintiff did not Conduct an Investigation during the Mock
                  Survey .......................................................................................... 10

      B.    Defendants were not Aware of Any Purported Protected Conduct ........ 12

      C.    Plaintiff Was Properly Terminated for a Non-Retaliatory Reason –
            His Consistently Poor Performance ....................................................... 15

II.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF
      VIOLATION OF NEW YORK STATE LABOR LAW § 740 .......................... 17

      A.    Plaintiff Was Not Retaliated Against ..................................................... 17

      B.    Plaintiff Did Not Make a Pre-termination Disclosure to a
            Supervisor or a Public Body .................................................................. 18

      C.    Plaintiff did not Establish an Actual Violation of Law, Rule or
            Regulation .............................................................................................. 19

      D.    Plaintiff Has Not Demonstrated an Actual Violation of Law, Rule
            or Regulation that Presented a Substantial and Specific Danger to
            the Public Health or Safety ................................................................... 21

III.  PLAINTIFF HAS WAIVED HIS CLAIMS BROUGHT PURSUANT TO
      §3730 BECAUSE HE HAS INVOKED NEW YORK STATE LABOR
      LAW § 740 .......................................................................................................... 21

IV.   KBEC IS ENTITLED TO RECOVER ITS ATTORNEYS FEES AND
      COSTS FROM PLAINTIFF PURSUANT TO LABOR LAW § 740, or
      § 3730(g) ............................................................................................................. 22

Conclusion .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anderson v. Liberty Lobby,*
 477 U.S. 242 (1986).................................................................................7

*Balko v. Ukrainian Nat'l Fed. Credit Union,*
 No. 13 Civ. 1333, 2014 U.S. Dist. LEXIS 42427 (S.D.N.Y. Mar. 28, 2014)..........................7

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986).................................................................................6

*Chukwurah v. Stop & Shop Supermarket Co. LLC,*
 354 Fed. Appx. 492 (2d Cir. 2009)..................................................................13

*Davis v. State of New York,*
 316 F.3d 93 (2d Cir. 2002)..........................................................................8

*De Jesus v. City of New York,*
 No 10 Civ. 9400 (GBD), 2012 U.S. Dist. LEXIS 23090 (S.D.N.Y. Feb. 21, 2012) ..............10

*Dister v. The Continental Group, Inc.,*
 859 F.2d 1108 (2d Cir. 1988)........................................................................7

*Faldetta v. Lockheed Martin Corp.,*
 No. 98 Civ. 2614, 2000 U.S. Dist. LEXIS 16216 (S.D.N.Y. Nov. 9, 2000) ...................13, 16

*Forkell v. Lott Assisted Living Corp.,*
 No. 10 Civ. 5765, 2012 U.S. Dist. LEXIS 72898 (S.D.N.Y. May 21, 2012)...............8, 16, 17

*Frank v. Walgreens Co.,*
 No. 09 CV 955, 2011 U.S. Dist. LEXIS 109003 (E.D.N.Y. Sept. 26, 2011) ...................20, 21

*Garcia v. Aspira of N.Y., Inc.,*
 No. 07 Civ. 5600, 2011 U.S. Dist. LEXIS 41708 (S.D.N.Y. Apr. 13, 2011) ....................9, 12

*Herman v. RSR Sec. Servs. Ltd.,*
 172 F.3d 132 (2d Cir. 1999).........................................................................18

*Hugee v. SJC Group, Inc.,*
 No. 13 Civ. 0423 (GBD), 2013 U.S. Dist. LEXIS 116471 (S.D.N.Y. Aug. 13, 2013) ..........18

*In re Sassower,*
 20 F.3d 42 (2d Cir. 1994)...........................................................................24

4845-3595-2951.17

In the matter *of Plotzker v. Am. Bd. of Urology*,
No. 99-cv-00327 (RCL), (D.D.C. 2005)................................................................24

*Jones v. Newman*,
No. 98 Civ. 7460, 1999 U.S. Dist. LEXIS 10171 (S.D.N.Y. June 30, 1999)........................24

*Krause v. Eihab Human Servs.*,
No. 10 Civ. 898, 2015 U.S. Dist. LEXIS 101820 (E.D.N.Y. Aug. 4, 2015) .................. passim

*Liburd v. Bronx Leb. Hosp. Ctr.*,
No. 07 Civ. 11316, 2009 U.S. Dist. LEXIS 61131 (S.D.N.Y. Apr. 2, 2009) ..........................9

*Liburd v. Bronx Lebanon Hosp. Ctr.*,
372 F. App'x 137 (2d Cir. 2010) ..........................................................................15

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..........................................................................................15

*McGrane v. Reader's Digest Ass'n*,
863 F. Supp. 183 (S.D.N.Y. 1994) ......................................................................19

*McKenna on Behalf of U.S. v. Senior Life Mgmt., Inc.*,
429 F. Supp. 695 (S.D.N.Y. 2006) .................................................................21, 22

*McLee v. Chrysler Corp.*,
109 F.3d 130 (2d Cir. 1997)..................................................................................7

*Metito (Overseas) Ltd. v. GE*,
2009 U.S. Dist. LEXIS 12590 (S.D.N.Y. Feb. 17, 2009).............................................7

*Mikes v. Straus et al.*,
853 F. Supp. 115 (S.D.N.Y. 1994) ......................................................................21

*Mikes v. Straus*,
889 F. Supp. 746 (S.D.N.Y. 1995) ..................................................................11, 12

*Noble v. 93 Univ. Place Corp.*,
303 F. Supp. 2d 365 (S.D.N.Y. 2003)..................................................................17

*Olsson v. Vertis Communs.*,
No. 09 Civ. 05428 (GBD), 2010 U.S. Dist. LEXIS 137589 (S.D.N.Y. Dec. 23, 2010)..........12

*Plotzker v. Royce C. Lamberth, et al.*,
Civil No. 3:08-cv-0027, 2008 U.S. Dist. LEXIS 86198 (W.D. Va. Oct. 22, 2008) ...............24

*Reddington v. Staten Island Univ. Hosp.*,
373 F. Supp. 2d 177 (E.D.N.Y. 2005) ..................................................................22

*Reyes v. Energy Transp. Corp.*,
   No. 96 Civ. 3321, 1997 U.S. Dist. LEXIS 6864, 1997 WL 256923 (S.D.N.Y. May 16,
   1997) ....................................................................................................................................20

*Rosen v. Thornburgh*,
   928 F.2d 528 (2d Cir. 1991) ...............................................................................................7

*Stern v. Trustees of Columbia Univ.*,
   131 F.3d 305, 312 (2d Cir. 1997) ........................................................................................7

*Sutton v. City of Yonkers*,
   No. 13 Civ. 501 (GBD)(BWG), 2015 U.S. Dist. LEXIS 24925 (S.D.N.Y. Mar. 2,
   2015) ....................................................................................................................................7

*United States ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) .............................................................................................13

*United States ex rel. Mikes v. Straus*,
   846 F. Supp. 21 (S.D.N.Y. 1994) ......................................................................................22

*United States ex. rel. Mikes v. Straus*,
   274 F.3d 687 (2d Cir. N.Y. 2001) ......................................................................................23

*United States ex rel. Sasaki v. New York Univ. Med. Ctr.*,
   No. 05 Civ. 1613, 2012 U.S. Dist. LEXIS 8672 (S.D.N.Y. Jan. 25, 2012) ..................... passim

*Universal Health Servs. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) .......................................................................................................23

*Varughese v. Mount Sinai Med. Ctr.*,
   No. 12 Civ. 8812, 2015 U.S. Dist. LEXIS 43758 (S.D.N.Y. Mar. 27, 2015) .........................18

## OTHER CASES

*Berde v. North Shore-Long Is. Jewish Health Sys., Inc.*,
   50 A.D.3d 834 (2d Dep't 2008) .........................................................................................21

*Bordell v. General Elec. Co.*,
   208 A.D.2d 219 (1st Dep't 1995) .......................................................................................19

*Green v. Saratoga A.R.C.*,
   233 A.D.2d 821 (3d Dep't 1996) .......................................................................................19

*Kraus v. New Rochelle Hosp. Med. Ctr.*,
   216 A.D.2d 360 (2d Dep't 1995) ..................................................................................17, 19

*Mazzacone v. Corlies Assoc.*,
   21 A.D.3d 1066 (2d Dep't 2005) .......................................................................................21

iv

*Owitz v. Beth Israel Med. Ctr.,*
    1 Misc. 3d 912A, 2004 N.Y. Misc. LEXIS (N.Y. Sup. Ct. 2004) ..........................................22

*Rotwein v. Sunharbor Manor Residential Health Care Facility,*
    181 Misc. 2d 847 (N.Y. Sup. Ct. 1999) ...............................................................................22

*Russek v. Dag Media, Inc.,*
    47 A.D.3d 457 (1st Dep't 2008) ............................................................................................23

**FEDERAL STATUTES**

31 U.S.C. § 3730 (2016) ...................................................................................... passim

31 U.S.C. § 3730(d) (2016) ...........................................................................................23

31 U.S.C. § 3730(h) (2016) ................................................................................ passim

31 U.S.C. § 3730(g) (2016) .....................................................................................22, 25


**OTHER STATUTES**

N.Y. State Fin. Law § 191 (Consol. 2016) ...................................................................8

N.Y. Lab. Law § 2(6) (Consol. 2016) ........................................................................18

N.Y. Lab. Law § 740 (Consol. 2016) .............................................................. passim

**RULES**

Fed. R. Civ. P. 11 ...........................................................................................................24

Fed. R. Civ. P. 56 ..............................................................................................................6

v

Kips Bay Endoscopy Center, LLC ("KBEC") and Kips Bay Anesthesia, P.C. ("KBA" and with KBEC the "Defendants") respectfully submit this Memorandum of Law in support of its Motion for Summary Judgment requesting that plaintiff Edward Plotzker's ("Plaintiff") claims against Defendants be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP") 56.

### Preliminary Statement

On January 12, 2012, Plaintiff was terminated by the Defendants.  Prior to that date, Defendant had been employed as an anesthesiologist to assist in endoscopic procedures such as colonoscopies.  The termination came after more than three years of consistent and well-documented problems with Plaintiff's performance.  These problems included poor hand hygiene habits, which is in conflict with the most basic of anti-infection practices, and a penchant for making unprofessional and inappropriate comments to his patients.  These comments included providing uninvited medical diagnoses (telling one patient she had some type of "syndrome", telling another that her breast cancer might recur), making inappropriate racial comments (telling a patient it was difficult to place an IV because of her skin color) and off-color "jokes" (telling a patient that extended time alone gave him "more time to kill you.").

Plaintiff's tenure with Defendants only lasted as long as it did because of the good will of Defendants' Medical Director, Dr. Charles Friedlander.  Dr. Friedlander, who was responsible for all decisions relating to the hiring and firing of physicians, decided to try to mentor Plaintiff's, rather than discard him.  However, in January 2012, Dr. Friedlander realized that he had no choice but to terminate Plaintiff, after an experienced, third-party consultant, Carol Hiatt, reported her assessment of Plaintiff's clinical conduct during an endoscopy procedure she observed as part of a mock survey being conducted in preparation for an accreditation survey

(the "Procedure").  Ms. Hiatt has described Plaintiff as one of the worst physicians she had ever seen in the more than ten thousand endoscopies she had observed in her career.  Ms. Hiatt noted Plaintiff's problematic combination of poor hand hygiene, unsafe injection practices, and persistent talking while a procedure was ongoing.  After receiving Ms. Hiatt's assessment of Plaintiff, Dr. Friedlander made the decision to terminate Plaintiff.

Terminated due to his own poor performance, Plaintiff looked to exact some form of retribution against Defendants.  He did so by first inundating various agencies with a series of questions and complaints regarding Defendants, starting in April 2012, more than three months *after* his termination.  He then filed this action.  Predictably, given Defendants' excellent reputation and operations, no agency ever took any action against Defendants as a result of Plaintiff's malicious and baseless complaints.  Nor did the government decide to intervene in his *qui tam* action.

Now, with discovery complete, Plaintiff's baseless claims can finally be put to rest, as there is absolutely no evidence, other than Plaintiff's own self-serving and unsupported statements, to support Plaintiff's claims. Plaintiff has testified that he believes he was terminated as a result of what occurred during the Procedure.  Of that, there is no dispute.  Ms. Hiatt's observations during the Procedure was the culmination of years of issues with Plaintiff and was the precipitating event leading to his termination.

What is also beyond any legitimate dispute is that Plaintiff's attempt to transform his termination into an actionable claim is nothing more than a work of fiction, authored by an individual who has been previously reprimanded by federal courts for bringing frivolous claims. Rather than accept that he was terminated due to his own actions, Plaintiff has manufactured a claim based upon a supposed declaration made during the Procedure that he was going to report

Defendants to "the state and Medicare." Put best by Ms. Hiatt, and confirmed by others who were in the room, such statements "absolutely" were not made. Plaintiff never stated he was going to report Defendants to the government or anyone else, not during the Procedure or at any other time. Indeed, as Ms. Hiatt confirmed, Defendants operation is busy, well-managed, and clean, without any indication of fraud, relating to Medicare or otherwise.

Even if Plaintiff's lone, self-serving, and fictional statement was somehow enough to survive summary judgment (which it is not), Plaintiff's claim would nevertheless be subject to dismissal. The evidence establishes that Dr. Friedlander, the sole decision maker regarding Plaintiff's termination, was not aware of Plaintiff's purported statement regarding a report to the state or Medicare, and such statement played no role in Dr. Friedlander's decision to terminate Plaintiff.  While this is unsurprising, given that the evidence establishes that Plaintiff never made such a statement, Plaintiff concedes that he did not convey to Dr. Friedlander—or anyone else in Defendants' management—of what he alleges transpired during the Procedure.

Plaintiff has nothing other than his unsupported allegations, controverted by all other evidence and, in some circumstances, his own testimony.  His bare allegations alone cannot support his claims.  With no genuine issue of material fact present and the evidence clear that Plaintiff was terminated for legitimate reasons, Plaintiff's claims must be dismissed.

### Statement of Fact & Procedural History

Plaintiff initially began working at KBEC in March 2008, on a per diem basis, while employed with a different medical group, Apollo.  [Rule 56 Stat. at ¶ 13.]  In 2008, Plaintiff's relationship with Apollo deteriorated, and Plaintiff left amidst a series of accusations between himself and Apollo.  [Rule 56 Stat. at ¶ 14.]  Around September 2008, Dr. Friedlander, the medical director for KBEC, who was in charge of the hiring and firing of physicians, agreed to

hire Plaintiff on a full time basis.  [Rule 56 Stat. at ¶¶ 5, 15.]  In 2009, Plaintiff also became

employed by defendant KBA, as KBA had recently been formed and retained by KBEC to

provide anesthesia services in connection with work for certain HMOs.  [Rule 56 Stat. at ¶¶ 6,

17.]

Defendants almost immediately began experiencing issues with Plaintiff's performance,

leading Plaintiff to be placed on probation in May 2009.  [Rule 56 Stat. at ¶¶ 19-20.]  Plaintiff's

problems generally concerned: (a) comments to patients on medical issues not relevant to his

performing anesthesia and outside his expertise (telling one patient that it was difficult to place

an IV due to her skin color, telling another that because her nipple was still intact she may get

breast cancer again); (b) inappropriate jokes that made patients anxious (telling a patient that

being in the room with him gave him "more time to kill you"); and (c) issues relating to placing

IVs in patients, including minimizing patients' complaints regarding his placement of IVs.  [Rule

56 Stat. at ¶¶ 20-25]  After being placed on probation, KBEC continued to receive negative

feedback regarding Plaintiff in patient surveys that tracked the exact same issues for which

Plaintiff had been placed on probation.  [Rule 56 Stat. at ¶ 27.]

Dr. Friedlander began receiving calls from other practitioners within the Defendant

organizations, including Wendy Monkcom, M.D., Director of Anesthesiology Services at KBEC,

to terminate Plaintiff.  [Rule 56 Stat. at ¶¶ 28-29.]  But Dr. Friedlander resisted, due to his belief

that he could help and rehabilitate Plaintiff.  (*Id.*)  Dr. Friedlander finally understood that he

could not change Plaintiff's performance after the full scope of the problems with Plaintiff's

conduct were brought to a head by the observations of an independent consultant retained to

assist KBEC in identifying issues in a "mock survey" undertaken in advance of an accreditation

survey.  [Rule 56 Stat. at ¶¶ 31-32.]  The mock survey was conducted over three days in January

4

2012 by HCI Consultants, Inc. ("HCI"), and, specifically, by Carol Hiatt, a consultant with HCI. (*Id.*)  Ms. Hiatt was assisted by Dr. Kristine Mighion, HCI's Managing Director and CEO (together with Ms. Hiatt, the "Consultants").  [Rule 56 Stat. at ¶¶ 33-35.]

Ms. Hiatt observed Plaintiff during an endoscopy procedure (the "Procedure"), and identified a variety of problems with his conduct, including poor hand hygiene, incessant talking, muting alarms, and lack of attention to the patient.  [Rule 56 Stat. at ¶¶ 36-43.]  Plaintiff's problems were not typical, and according to Ms. Hiatt,   Plaintiff was one of the worst physicians she had seen during the more than ten thousand procedures she had observed in her career.  [Rule 56 Stat. at ¶¶ 51-53.]  Other than Plaintiff's conduct, Hiatt found KBEC to be a well-managed, clean surgery center.  (*Id.*)  To the extent that she uncovered any issues with KBEC, they were neither serious or unusual for a surgery center of KBEC's size and number of physicians.  (*Id.*)  Though Plaintiff would later claim that the Consultants identified Medicare fraud present at KBEC, HCI found nothing of the sort, and had no discussion with anyone at KBEC, including Plaintiff, about Medicare fraud, or the reporting of Defendants to any state or federal agency. [Rule 56 Stat. at ¶¶ 44-48.]

After speaking to Ms. Hiatt about her assessment of Plaintiff, Dr. Friedlander, the Medical Director and person responsible for the oversight of physicians who performed procedures at KBEC's facility, made the decision to terminate Plaintiff, and did so on January 12, 2012.  [Rule 56 Stat. at ¶¶ 57-59.]  At the time Dr. Friedlander decided to terminate Plaintiff, he was not aware of any claim by Plaintiff that he had or was going to report Defendants to the government.  (*Id.*)  Indeed, Plaintiff has admitted that, outside of what he claims to have stated during the Procedure, he did not tell anyone, including Dr. Friedlander, that he allegedly threatened to report Defendants to the government. [Rule 56 Stat. at ¶¶ 48, 59.]

The first, verifiable complaint that Plaintiff made concerning Defendants was not until more than three (3) months after his termination in April 2012, which precipitated a series of repetitive, baseless complaints to various agencies. [Rule 56 Stat. at ¶ 84.]  Prior to his termination, Plaintiff testified that he only communicated to government agencies (such as the Office of Professional Medical Conduct ("OPMC")) in order to receive "guidance" regarding how to proceed, and not to actually make a complaint against Defendants. [Rule 56 Stat. at ¶¶ 65-67, 87.] Unsurprisingly, Defendants were never contacted by any governmental agency, either regarding his alleged pre-termination phone calls to receive "guidance," or his post-termination "complaints." (*Id.*)

In or around December 2012, Plaintiff commenced a *qui tam* action against Defendants, alleging violations of the state and federal False Claims Acts ("FCA").  The federal government ultimately chose not to pursue the *qui tam* action, and Plaintiff was permitted to pursue certain claims individually.  Plaintiff has subsequently voluntarily dismissed his breach of contract claim [DE 31], leaving three claims asserted against Defendants: (1) Violation of 31 U.S.C. § 3730(h) (2016), the anti-retaliation provision of the FCA; (2) Violation of the anti-retaliation provision of New York State FCA; and, (3) violation of New York State Labor Law § 740 (Consol. 2016), an anti-retaliation statute designed to protect against substantial and specific danger to public health and safety.

## <u>Argument</u>

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986).  The non-movant must adduce "significant probative evidence" demonstrating a factual

dispute exists to avoid summary judgment on these grounds.  *Anderson v. Liberty Lobby*, 477

U.S. 242, 249-50 (1986); *see also e.g., Dister v. The Continental Group, Inc.*, 859 F.2d 1108,

1114 (2d Cir. 1988).  The non-movant may not therefore rely on "conclusory allegations or

unsubstantiated speculation" *Sutton v. City of Yonkers*, No. 13 Civ. 501 (GBD)(BWG), 2015

U.S. Dist. LEXIS 24925, at *5 (S.D.N.Y. Mar. 2, 2015).

      In retaliation cases such as this one, while courts must be mindful that retaliation must

sometimes be proven by the cumulative weight of circumstantial evidence, summary judgment is

still appropriate where a plaintiff cannot set forth the existence of a genuine issue of material

fact.  *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *Rosen v. Thornburgh*, 928

F.2d 528, 533 (2d Cir. 1991).  In particular, "when an employer provides convincing evidence to

explain its conduct and the plaintiff's argument consists of purely conclusory allegations of

retaliation, the Court may conclude that no material issue of fact exists and it may grant

summary judgment to the employer."  *Balko v. Ukrainian Nat'l Fed. Credit Union*, No. 13 Civ.

1333, 2014 U.S. Dist. LEXIS 42427, *25-26 (S.D.N.Y. Mar. 28, 2014).

      To survive summary judgment "'the plaintiff's admissible evidence must show

circumstances that would be sufficient to permit a rational finder of fact to infer that the

defendant's employment decision was more likely than not based on' retaliatory motive."  *Balko,*

2014 U.S. Dist. LEXIS 42427, at *26 (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d

305, 312 (2d Cir. 1997).  Importantly, the "'mere existence of a scintilla of evidence in support

of the [nonmovant's] position will be insufficient' to withstand a motion for summary

judgment." *United States ex rel. Sasaki v. New York Univ. Med. Ctr.*, No. 05 Civ. 1613, 2012

U.S. Dist. LEXIS 8672, at *14 (S.D.N.Y. Jan. 25, 2012) (quoting *Metito (Overseas) Ltd. v. GE,*

2009 U.S. Dist. LEXIS 12590, *19 (S.D.N.Y. Feb. 17, 2009)); *see also Davis v. State of New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion.").

As set forth below, because Plaintiff's case rests solely on a scintilla of evidence—his own conclusory allegations of protected conduct and retaliation—that are not supported by the record as a whole, summary judgment must be granted to Plaintiffs.

     I.     PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION UNDER 31 U.S.C. § 3730(h)(1) OR N.Y. STATE FIN. LAW § 191.

The anti-retaliation provision of the FCA, 31 U.S.C. § 3730(h) and N.Y. State Fin. Law § 191 (Consol. 2016) are substantially similar.  In order to state a *prima facie* case of retaliation, Plaintiff must prove that "(1) that he engaged in conduct protected under the statute, (2) that defendants were aware of his conduct, and (3) that he was terminated in retaliation for his conduct."  *United States ex rel. Sasaki*, 2012 U.S. Dist. LEXIS 8672, at *33;  *Forkell v. Lott Assisted Living Corp.*, No. 10 Civ. 5765, 2012 U.S. Dist. LEXIS 72898, at *13 (S.D.N.Y. May 21, 2012) (The whistleblower provision of N.Y. State Fin. Law § 191 "is essentially identical in language and substance to its federal counterpart."); *Krause v. Eihab Human Servs.*, No. 10 Civ. 898, 2015 U.S. Dist. LEXIS 101820, at *15 (E.D.N.Y., Aug. 4, 2015) (listing same elements for each statute).

Plaintiff has not produced even a scintilla of evidence to support his allegations of protected conduct, or Defendants' awareness of it, or to demonstrate that Defendants' legitimate, non-retaliatory reasons for Plaintiff's termination (his poor performance and inappropriate conduct) was pretextual.

### A.     Plaintiff did not Engage in Protected Conduct under the Statute

In order to substantiate a *prima facie* case for retaliation, Plaintiff must first show that he engaged in protected activity—any "lawful acts done . . . in furtherance of an action under" 31 U.S.C. § 3730.  *See* 31 U.S.C. § 3730(h)(1).  For Plaintiff's actions to qualify as protected activity under § 3730(h), he "must demonstrate that [his] investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government."  *Liburd v. Bronx Leb. Hosp. Ctr.*, No. 07 Civ. 11316, 2009 U.S. Dist. LEXIS 61131, at *36 (S.D.N.Y. Apr. 2, 2009) (internal citation omitted); *Krause*, 2015 U.S. Dist. LEXIS 101820, at *15-16 ("a plaintiff must at least demonstrate that . . . her investigation . . . w[as] conducted with the *purpose* of exposing a fraud upon the government.").  This means that Plaintiff must show he engaged in activity that "was calculated to, or reasonably could lead to a viable FCA action."  *Krause*, 2015 U.S. Dist. LEXIS 101820, at *6 (E.D.N.Y., Aug. 4, 2015).

While, certainty of an eventual *qui tam* suit is not necessary, "a relator is required to show a "good faith basis", or "objectively reasonable basis", for believing that he or she was investigating matters in support of a viable FCA case."  *U.S. ex rel. Sasaki*, 2012 U.S. Dist. LEXIS 8672, at *35-36.  Importantly, a plaintiff may not gain the protections of the whistleblower statute for "activities that are not related to exposing or deterring fraud."  *Garcia v. Aspira of N.Y., Inc.*, No. 07 Civ. 5600, 2011 U.S. Dist. LEXIS 41708 (S.D.N.Y. Apr. 13, 2011) (internal citation omitted).

Here, there is no evidence that Plaintiff at any time (i) conducted an investigation, (ii) directed at exposing fraud, or (iii) that was calculated to, or reasonably could lead to, a viable FCA action.

1.      *Plaintiff did not Engage in an Investigation Prior to the HCI Mock Survey.*

Prior to his termination, Plaintiff claims that, during his tenure with Defendants, he called OPMC several times and the Department of Health, on one occasion, to discuss a variety of issues. [Rule 56 Stat. at ¶¶ 65-67, 77.] Plaintiff testified that he viewed these agencies as a resource for doctors, and he called for the purpose of obtaining personal guidance on how to deal with issues, and not for the purpose of registering a complaint. (*Id.*) In fact, OPMC does not take verbal complaints over the phone, but instead requires complainants to fill out a form and sign it prior to submission to the organization. (*Id.*) Plaintiff has presented no proof that he made these calls. Moreover, while Plaintiff speculates that OPMC and/or the Department of Health could have taken his questions as a complaint, Plaintiff has made clear that he was not attempting to conduct an investigation, because, he claims, he did not want to take any action that would impact his job, until the mock survey provided him a "good reason" to do so. [Rule 56 Stat. at ¶ 80.]

The only communications with governmental agencies that have some semblance of a "complaint" were made by Plaintiff several months *after* his termination, between April and August of 2012 [Rule 56 Stat. at ¶ 80.], and post-termination conduct cannot be the basis of a retaliation claim. *De Jesus v. City of New York*, No 10 Civ. 9400 (GBD), 2012 U.S. Dist. LEXIS 23090, at *20 n.5 (S.D.N.Y. Feb. 21, 2012).

2.      *Plaintiff did not Conduct an Investigation during the Mock Survey.*

Plaintiff claims that during the Procedure he proclaimed that he would report Defendants to the state and the Medicare. Present in the room during the Procedure, other than Plaintiff, were Ms. Hiatt and Dr. Kristine Mighion from HCI, KBEC nurse Kimberly Ahwal, and KBEC endoscopist Dr. Inessa Khaykis. [Rule 56 Stat. at ¶ 36.] Each of these individuals confirms that

Plaintiff never uttered a statement that he was going to report Defendants to the state and Medicare.  [Rule 56 Stat. at ¶¶ 44-47.]  In the words of Ms. Hiatt, who was the lead consultant for the mock survey, Plaintiff "absolutely" did not state that he was going to report Defendants. [Rule 56 Stat. at ¶ 46.]  Indeed, though Plaintiff claims that his declaration was in response to an assertion by one of the HCI consultants that Defendants were engaged in fraud, there was no evidence of Medicare fraud at KBEC.  [Rule 56 Stat. at ¶ 44.]

Moreover, this case is easily distinguishable from the cases from this District where plaintiffs were found to have met their burden under Rule 56 to demonstrate that they had met the "protected conduct" requirement of § 3730(h).  *See Krause*, 2015 U.S. Dist. LEXIS 101820, at *17-18 (plaintiffs established that they engaged in protected conduct with evidence they brought the potential FCA claims of a third person to the notice of an independent, third-party auditor);[1] *United States ex rel. Sasaki*, 2012 U.S. Dist. LEXIS 8672, at *36 (the plaintiff established that he engaged in protected conduct with evidence he actually submitted a complaint to a government agency alleging that his employer was defrauding the government prior to his termination.); *Mikes v. Straus*, 889 F. Supp. 746, 752 (S.D.N.Y. 1995) (plaintiff established that she engaged in protected conduct by observing the misuse of tests, investigating the medical histories of certain patients treated with the test, and "confronting defendants with her observations," none of which defendants denied.)

Plaintiff is left with nothing more than his own testimony, not only unsupported, but contravened, by all other evidence.  As set forth more fully in Section IV below, Plaintiff's

---

[1] It should be noted that the *Krause* plaintiffs also alleged additional protected activities, but did not provide "sufficient evidence, even when viewed in the light most favorable to [plaintiffs] such that a reasonable juror could find that these additional alleged protected activities were 'calculated, or reasonably could lead, to a viable FCA action,' and were known to the Defendants."  *Krause*, 2015 U.S. Dist. LEXIS 101820, at *21 n.2 (internal citation omitted).

allegation of an "investigation" and subsequent "retaliation" are no more than thin cover for his attempts to harass Defendants; it is this type of behavior that is "detached from the [FCA]" and therefore inappropriate for whistleblower protection. *Garcia,* 2011 U.S. Dist. LEXIS 41708, at *11. As this Court has made clear, unsubstantiated allegations, such as Plaintiff's, are not enough to survive summary judgment. *Olsson v. Vertis Communs.,* No. 09 Civ. 05428 (GBD), 2010 U.S. Dist. LEXIS 137589, at *5-6 (S.D.N.Y. Dec. 23, 2010) (granting summary judgment to defendants because plaintiff's testimony alone, "without admissible evidence of discriminatory conduct or animus on the part of Defendant," was insufficient for "a reasonable jury [to] find that Plaintiff was the victim of unlawful discrimination, termination, or retaliation.").

### B.    Defendants were not Aware of Any Purported Protected Conduct

Not only does the evidence establish that Plaintiff did not engage in protected conduct, but it also establishes that, even if Plaintiff's bare allegations are credited, this alleged conduct played no role in the decision to terminate him.

Plaintiff has testified that he believes he was terminated because of the statements he claims to have made during the Procedure. [Rule 56 Stat. at ¶ 63.] However, the evidence establishes that neither Dr. Friedlander, the individual who unilaterally decided to terminate Plaintiff, nor, indeed, any other member of Defendants' management was aware of any such comments made by Plaintiff, and those comments therefore could not have played a role in Plaintiff's termination. [Rule 56 Stat. at ¶¶ 58-62.]

In order to survive summary judgment, Plaintiff must supply sufficient facts from which a reasonable jury could conclude that he was discharged because of activities which gave Defendants reason to believe he was contemplating a *qui tam* action against them. *Mikes*, 889 F. Supp. at 753. Necessary to such a showing is that Defendants were aware of Plaintiff's protected

conduct.  *See United States ex rel. Sasaki*, 2012 U.S. Dist. LEXIS 8672, at *37 (conclusory

allegations of employer's awareness of protected conduct were insufficient to defeat summary

judgment in absence of "any testimony or other evidence" referencing alleged discussion with

employer); *but cf. Krause*, 2015 U.S. Dist. LEXIS 101820 at *23 (a "wealth of evidence"

showing employer's awareness of protected conduct including board meeting minutes and

deposition testimony).  The awareness of the protected conduct must reside with a decision-

maker. *Chukwurah v. Stop & Shop Supermarket Co. LLC*, 354 Fed. Appx. 492, 495 (2d Cir.

2009) (where undisputed record evidence indicated that the "relevant decision-makers with

control over plaintiff's employment had no knowledge" of his protected conduct, plaintiff could

not "establish[ ] a prima facie case for retaliatory discharge. . . .").

      Accordingly, to proceed with a claim under both the federal and state FCAs, Plaintiff

must show that the Defendants knew "that plaintiff is engaged in protected activity." *U.S. ex rel.

Sasaki*, 2012 U.S. Dist. LEXIS 8672, at *37 (citing *U.S. ex rel. Yesudian v. Howard Univ.,* 153

F.3d 731, 742 (D.C. Cir. 1998)); *see also U.S. ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th

Cir. 1996) ("[U]nless the employer is aware that the employee is investigating fraud, the

employer could not possess the retaliatory intent necessary to establish a violation of §

3730(h)."); *Faldetta v. Lockheed Martin Corp.*, No. 98 Civ. 2614, 2000 U.S. Dist. LEXIS 16216,

*44 (S.D.N.Y. Nov. 9, 2000) (finding that plaintiff's attempt to later characterize prior

investigations as "in furtherance of an FCA" claim were unavailing, and therefore plaintiff

ultimately failed to show defendants had any awareness of protected activity).

      The uncontroverted evidence is that the decision to terminate Plaintiff was made solely

by Dr. Friedlander, in his capacity as Medical Director.  [Rule 56 Stat. at ¶¶ 57-62.]  Dr.

Friedlander was also the individual who informed Plaintiff that he was terminated, in a meeting

attended by only Dr. Friedlander and Plaintiff.  (*Id.*)  Putting aside for a moment that the evidence establishes that the alleged statements made by Plaintiff during the Procedure simply did not happen, the evidence also establishes that Dr. Friedlander was unaware of any such statements.  [Rule 56 Stat. at ¶¶ 48, 55, 58-62.]  The testimony of the individuals present during the Procedure, *including Plaintiff*, establish that neither Dr. Friedlander, nor anyone else within KBEC, management or otherwise, were informed about Plaintiff's alleged statements.[2]  (*Id.*)  Moreover, Plaintiff has admitted that he did not tell Dr. Friedlander, or anyone else, what he allegedly said during the Procedure, that he does not know what had been conveyed to Dr. Friedlander, and that Dr. Friedlander did not refer to his alleged statements regarding reporting Defendants during the meeting.  [Rule 56 Stat. at ¶¶ 48, 59.]

Where, as here, a plaintiff alleges that his employer was aware of his protected behavior, but "has not identified any testimony or other evidence that references" the basis for this belief, those "conclusory statements or mere allegations" are insufficient to defeat summary judgment. *U.S. ex rel. Sasaki*, 2012 U.S. Dist. LEXIS 8672, at *37-38 (internal citations omitted).  Plaintiff therefore cannot raise a genuine issue of material fact as to the second element of his FCA claims and for these reasons, Defendants' motion should be granted.

---

[2] To the extent that Plaintiff attempts to move away from his testimony and claim that his conduct prior to the Procedure in some way played a role in his termination, Plaintiff did not inform anyone in management at Defendants about the calls he allegedly placed prior to his termination, or the advice he was allegedly provided.  [Rule 56 Stat. at ¶ 78.]  While Plaintiff alleges that he told fellow anesthesiologist, Dr. Polat Novruzov, about certain of his calls to OPMC, Dr. Novruzov does not recall any such conversations, and, in any event, confirms that he never informed Dr. Friedlander, or anyone else in Defendants' management of any such phone calls being placed.  (*Id.*)

### C.   Plaintiff Was Properly Terminated for a Non-Retaliatory Reason – His Own Poor Performance

As set forth above, Plaintiff cannot establish a *prima facie* case of retaliation against Defendants.  However, even if Plaintiff could meet his initial burden of establishing a retaliation claim, the evidence established during discovery demonstrates that Plaintiff was terminated for a legitimate nondiscriminatory reason, and there is no evidence that Defendants stated reason is pretextual.  *Liburd v. Bronx Lebanon Hosp. Ctr.*, 372 F. App'x 137, 139 (2d Cir. 2010).  *See also Krause*, 2015 U.S. Dist. LEXIS 101820 at *24–25 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)) ("Under the McDonnell Douglas framework, courts apply the following burden-shift: (1) the employee bears to the initial burden of producing evidence sufficient to support a prima facie case of retaliation; (2) then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; and (3) finally the burden shifts back to the employee to demonstrate that the employer's stated reason is a pretext for retaliation.").

Plaintiff was not terminated merely for Ms. Hiatt's damning assessment of his medical practices during the Procedure, but because that assessment confirmed for Dr. Friedlander that problems that had been endemic to Plaintiff's performance throughout his employment with Defendants were not going to go away.  [Rule 56 Stat. at ¶¶ 19-29.]  Plaintiff was the subject of persistent complaints related to his conduct and professionalism during his tenure with Defendants.  In 2009, Plaintiff was placed on three months' probation, due to a variety of complaints, including (i) making a patient cry after telling her that she could still get cancer despite a double mastectomy, because her nipple was intact; (ii) telling a patient that the length of the procedure would give him "More time to kill you"; (iii) Sharing personal stories with a

15

patient, who stated that he was not Plaintiff's psychotherapist; and (iv) stating to a patient that

placing an IV was more difficult due to the patient's skin color. [Rule 56 Stat. at ¶¶ 20-25.]

Thereafter, Defendants continued to receive complaints and negative feedback regarding

Plaintiff's performance, and incidents similar to those that precipitated the 2009 probation

continued to occur. [Rule 56 Stat. at ¶ 27.] These persistent issues resulted in calls by others

within Defendants, including the head of anesthesiology, to terminate Plaintiff. [Rule 56 Stat. at

¶ 28.] Indeed, Plaintiff himself has acknowledged an instance where Dr. Friedlander intervened

and did not terminate Plaintiff, despite calls for him to do so. [Rule 56 Stat. at ¶ 68.]

It was against this backdrop that KBEC and specifically Dr. Friedlander received a report

from the HCI consultants regarding what they observed of Plaintiff during the mock survey. Ms.

Hiatt testified that Plaintiff's performance was one of the worst she had witnessed in the

thousands of procedures that she had observed both as a practicing nurse and a consultant. [Rule

56 Stat. at ¶ 52.] It was as a result of HCI's assessment, which was the culmination of many

years of patient complaints and improper conduct, that Plaintiff was terminated. [Rule 56 Stat. at

¶¶ 56-57.]

Plaintiff cannot demonstrate that the reasons for his termination were a pretext and that

the actual reason for plaintiff's termination was retaliation. He is required to demonstrate that

"(i) there is a material issue of fact as to whether [KBEC's] asserted reason for discharge is false

or unworthy of belief and (ii) more likely than not, his [protected conduct] was the real reason

for the discharge." *Faldetta*, 2000 U.S. Dist. LEXIS 16216, at *26. Plaintiff can demonstrate

neither.

It is "beyond dispute that an employer may terminate an employee based on inappropriate

comments, perceived insubordination, or disruptive behavior in the workplace." *Forkell*, 2012

16

U.S. Dist. LEXIS 72898, *31-32.  Here, the long and uncontroverted history of improper

behavior and complaints against Plaintiff demonstrate that he was a "serial offender" , *Phillips,*

2006 U.S. Dist. LEXIS 2606, at *19, and that his claim of retaliation is simply "'unconvincing

and incongruous' . . . in light of . . . [Plaintiff's] own behavior, which would warrant dismissal in

any context." *Forkell*, 2012 U.S. Dist. LEXIS 72898, at *34-35.  Because KBEC appropriately

terminated Plaintiff for poor performance—a legitimate, nondiscriminatory reason for its

actions—and there is no evidence that Defendants' stated reason was pretextual, Defendants'

motion should be granted.

## II.    PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF VIOLATION OF NEW YORK STATE LABOR LAW § 740

New York State Labor Law § 740 provides in relevant part that "[a]n employer shall not

take any retaliatory personnel action against an employee because such employee . . . discloses,

or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the

employer that is in violation of law, rule or regulation which violation creates and presents a

substantial and specific danger to the public health or safety".  N.Y. Lab. Law § 740(2)(a)

(Consol. 2016).

In order to establish a violation of this section, Plaintiff must prove that he was (i)

retaliated against because he (ii) disclosed to a supervisor or to a public body (iii) an activity,

policy or practice of the employer that is in violation of law, rule or regulation (iv) which

violation creates and presents a substantial and specific danger to the public health or safety.  *See*

*generally Kraus v. New Rochelle Hosp. Med. Ctr.*, 216 A.D.2d 360, 364 (2d Dep't 1995).

### A.    Plaintiff Was Not Retaliated Against

Plaintiff cannot sustain an action under Labor Law § 740 unless he can demonstrate that

he was actually retaliated against.  *See Noble v. 93 Univ. Place Corp.*, 303 F. Supp. 2d 365, 374

(S.D.N.Y. 2003) ("an essential element of [a § 740] claim is whether [plaintiff] suffered a retaliatory discharge.").  As set forth more fully in Point I *supra*, the uncontroverted evidence supports Defendant's claim that Plaintiff was not in fact retaliated against, but was terminated for his poor performance—a legitimate, non-retaliatory reason—which was not pretextual.  *See Varughese v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8812, 2015 U.S. Dist. LEXIS 43758, at *179 (S.D.N.Y. Mar. 27, 2015) ("[T]o fall afoul of the statute, the adverse action must be taken "because" the employee engaged in protected activity. Lab. Law § 740.  In other words, the whistleblower statute, like the anti-discrimination laws, requires some causal connection between an adverse personnel action and a report of dangerous activity.").  In essence, because Plaintiff cannot make out a § 3730 claim, he falls at the first hurdle of Labor Law § 740.[3]

### B.    Plaintiff Did Not Make a Pre-termination Disclosure to a Supervisor or a Public Body.

Plaintiff also cannot sustain an action under Labor Law § 740 because he has presented no evidence that he made a pre-termination disclosure to a "supervisor or a public body."  Lab. Law § 740 (2)(a).  Under the Labor Law, an "employer" is defined as "the person employing any such [employee], whether the owner, proprietor, agent, superintendent, foreman or other subordinate."  *Hugee v. SJC Group, Inc.,* No. 13 Civ. 0423 (GBD), 2013 U.S. Dist. LEXIS 116471, at *32 (S.D.N.Y. Aug. 13, 2013) (quoting Lab. Law § 2(6)).  The central inquiry in determining whether one qualifies as an "employer" is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case."  *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 139 (2d Cir. 1999).

---

[3] Although the absence of retaliation alone renders Plaintiff's § 740 claim baseless, for the purposes of completeness, Defendants address the remaining elements.

18

As set forth in more detail in section Point I *supra*, not a single person in a management or supervisory position over Plaintiff had any knowledge of Plaintiff's alleged threat to report KBEC to the state and to Medicare. [Rule 56 Stat. at ¶¶ 58-62.]   As the declarations of the members of the Board of Managers, as well as that of Dr. Inessa Khaykis and Dr. Wendy Monkcom set forth, Plaintiff made no complaint to any of them alleging any activity, policy or practice of KBEC that is in violation of law, rule or regulation during his employment.  *See Kraus*, 216 A.D.2d at 362 (plaintiff established this element of §740 by reporting concerns about a physician's behavior to two superiors, both of whom testified that the reporting had in fact occurred.).

Moreover, the only verifiable, written disclosures to a public body occurred several months *after* Plaintiff's termination.  The only alleged communications with a public body that occurred prior to Plaintiff's termination are alleged phone calls to OPMC and one phone call to the Department of Health (of which there is no evidence other than Plaintiff's self-serving testimony), where he did not lodge a complaint, but instead sought "guidance."  [Rule 56 Stat. at ¶¶ 65-67, 77.]   Where a plaintiff fails to "provide evidence of any specific reports made by him personally, for which he may have been penalized, concerning any substantial and specific danger to the public health or safety," a claim under Labor Law § 740 cannot be maintained. *McGrane v. Reader's Digest Ass'n*, 863 F. Supp. 183, 184 (S.D.N.Y. 1994).

### C.    Plaintiff did not Establish an Actual Violation of Law, Rule or Regulation

An action under Labor Law § 740 cannot be sustained with anything less than an *actual* "violation of law, rule or regulation."  *Bordell v. General Elec. Co.,* 208 A.D.2d 219, 221 (1st Dep't 1995).  New York State Courts have explicitly rejected the argument that a "reasonable belief" that such a violation has occurred is sufficient to maintain a claim under § 740.  *Id.*; *see also Green v. Saratoga A.R.C.,* 233 A.D.2d 821, 822 (3d Dep't 1996) ("§ 740 requires *proof of*

19

*an actual violation of a law, rule or regulation* . . . an employee's good-faith reasonable belief

that a violation may have occurred is not enough.") (emphasis added); *and Frank v. Walgreens*

*Co.,* No. 09 CV 955, 2011 U.S. Dist. LEXIS 109003, at *12 (E.D.N.Y. Sept. 26, 2011)

("violation must be actual and not merely possible . . . .").

 Here, with all discovery completed, Plaintiff has proffered not a shred of evidence that

Defendants actually violated any laws.  Plaintiff has admitted that he did not have access to

Defendants' office records, including their billing records, that would have the information

relating to the alleged Medicare violations, and further admitted that even when he finally

submitted complaints, months after his termination, he was simply bringing issues to the

government agencies' attention, so the that he could make a determination as to whether what

Defendants were doing was right or wrong, since he was not capable of making such

determinations. [Rule 56 Stat. at ¶ 86.]

 Simply throwing accusations at a government agency in the hope that something will

stick is not enough. *See Reyes v. Energy Transp. Corp.*, No. 96 Civ. 3321, 1997 U.S. Dist.

LEXIS 6864, 1997 WL 256923, at *9 (S.D.N.Y. May 16, 1997) (finding that plaintiff's

allegation that defendant "violated the Jones Act," without more, did not support a claim

under Labor Law § 740 because "plaintiff must identify a specific law, rule or regulation, the

violation of which he disclosed or threatened to disclose."). Unsurprisingly, not a single regulator

has followed up with Defendants in connection with any alleged discussion Plaintiff had with

them, or in response to the many post-termination written complaints Plaintiff filed against

Defendants (which are irrelevant for the purposes of Plaintiff's case anyway). Put simply,

Plaintiff cannot provide the required "evidence that the defendant's activities constituted a

violation of law or regulation," and the claim must therefore be dismissed.  *Berde v. North Shore-Long Is. Jewish Health Sys., Inc.*, 50 A.D.3d 834, 835 (2d Dep't 2008).

> **D.    Plaintiff Has Not Demonstrated an Actual Violation of Law, Rule or Regulation that Presented a Substantial and Specific Danger to the Public Health or Safety**

In addition, to maintain an action under Labor Law § 740, a plaintiff must "*plead and prove* that his or her employer engaged in an activity, policy, or practice which violated a law, rule or regulation that presented *a substantial and specific danger to the public health or safety*." *Mazzacone v. Corlies Assoc.*, 21 A.D.3d 1066, 1066-67 (2d Dep't 2005) (emphasis added).  As with the requirement that an actual law be violated, Labor Law § 740 requires . . . an *actual* and substantial present danger to the public health" such that "reasonable belief" does not place a plaintiff under the protection of the Section.  *Id.*

Nowhere in Plaintiff's pleadings has he even claimed that Defendants' alleged violations present a "substantial and specific danger to the public health and safety."  *See, e.g.,* Second Am. Compl., in its entirety, DE 23; *see also Frank,* 2011 U.S. Dist. LEXIS 109003, at *14 (finding that plaintiff had failed to demonstrate substantial and specific danger to the public health or safety and noting that plaintiff's "[c]omplaint itself does not contain a single allegation on this subject.").  Plaintiff made no such allegation in his deposition, and has not provided any documentary evidence to support this element of his claim.  Accordingly, Plaintiff's § 740 claim must be dismissed.

> **III.    PLAINTIFF HAS WAIVED HIS CLAIMS BROUGHT PURSUANT TO §3730 BECAUSE HE HAS INVOKED NEW YORK STATE LABOR LAW § 740**

Labor Law § 740, like several other New York statutes, "can only be invoked if a plaintiff chooses to forego available remedies under any other statute."  *McKenna on Behalf of U.S. v. Senior Life Mgmt., Inc.*, 429 F. Supp. 695, 698 (S.D.N.Y. 2006) ((citing *Mikes v. Straus et*

*al.*, 853 F. Supp. 115, 120-21 (S.D.N.Y. 1994)).  This means that the mere filing of a complaint containing a § 740 claim creates a statutory waiver of other retaliation claims.  *See* Lab. Law § 740(7) ("institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law."); *see also Rotwein v. Sunharbor Manor Residential Health Care Facility*, 181 Misc. 2d 847, 854 (N.Y. Sup. Ct. 1999) ("Labor Law § 740(7) is clear and suffers from no ambiguity.  It states that there is a waiver by the mere institution of an action containing a Labor Law § 740 claim."); *and Reddington v. Staten Island Univ. Hosp.,* 373 F. Supp. 2d 177, 186 (E.D.N.Y. 2005) (waiver provision "leads to a harsh result but not an absurd one.  It clearly states that the waiver applies when a plaintiff has instituted an action under section 740(7).").

Importantly the waiver applies to claims that "arise out of the same acts" as those underlying the § 740 claim "and/or that relate to the retaliatory action(s) on which the § 740 claim is based."  *Owitz v. Beth Israel Med. Ctr.,* 1 Misc. 3d 912A, 2004 N.Y. Misc. LEXIS, at *10 (N.Y. Sup. Ct. 2004).  Because Plaintiff's retaliation claims pursuant to both § 3730(h) and § 740 are based upon "the same transaction or occurrence," *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 24 (S.D.N.Y. 1994), Plaintiff has "elected a remedy that [is] incompatible with the remedy offered by the state of New York, *McKenna*, 429 F. Supp. 2d at 698, n.4, and because of the statutory waiver embedded in Labor Law § 740, Defendants' motion as to Plaintiff's § 3730 claim must be granted.

### IV.   KBEC IS ENTITLED TO RECOVER ITS ATTORNEYS FEES AND COSTS FROM PLAINTIFF PURSUANT TO LABOR LAW § 740, or § 3730(g)

Two of the three statutes upon which Plaintiff bases his claims—U.S.C. § 3730 and Labor Law § 740—provide for an award of attorneys' fees when a Plaintiff brings frivolous

litigation.  Because of the lack of merit in any of Plaintiff's claims and the fact that this case is the latest in a long line of vexatious litigation against former employers, Defendants respectfully submit that an award of attorney's fees is an appropriate sanction against Plaintiff.

31 U.S.C. § 3730(d)(4) (2016) states that "[f]ees and expenses" will be awarded "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." A claim is considered frivolous when, "viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law."  *United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. N.Y. 2001) *partially overturned on other grounds by Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1999 (2016).

Where a complaint filed pursuant to Labor Law § 740 "is without basis in law and fact," a court may "act[] within its discretion in awarding reasonable attorney's fees and costs. *Russek v. Dag Media, Inc.*, 47 A.D.3d 457, 458-59 (1st Dep't 2008) (citing Lab. Law § 740(6)).  In sum, both statutes' fee shifting provisions require a showing that a Plaintiff's claim is legally and factually unsupported.

As set forth above, Plaintiff is statutorily precluded from bringing claims under both § 3730(h) and Labor Law § 740, so his § 3730(h) claim is without basis in law.  Moreover, the thin reed upon which Plaintiff has based his retaliation claims are his own allegations, which are unsupported by any evidence uncovered in this case (and in fact contradicted by all other testimony and documentary evidence produced by either party during discovery).  Plaintiff's baseless claim for retaliation is simply a continuation of not only Plaintiff's malicious, post-termination filing of baseless complaints to government agencies, but a continuation of Plaintiff's pattern of frivolous litigation, which should not be countenanced by this court.

Plaintiff has pursued a variety of frivolous litigation for decades, including against his own attorneys and even a United States District Court Judge, who dismissed one of his cases. [Rule 56 Stat. at ¶¶ 88-95.]  In the matter *of Plotzker v. Am. Bd. of Urology*, No. 99-cv-00327 (RCL), (D.D.C. 2005),  Judge Royce C. Lamberth of the United States District Court, District of Columbia, (who Plaintiff would later sue) advised Plaintiff "to familiarize himself with Federal Rule of Civil Procedure 11, and refrain from filing further frivolous and scandalous unsupported accusations lest the plaintiff be subject to paying defendants' attorneys' fees for continuing to litigate this case."  September 30, 2005 Order of Judge Royce C. Lamberth, Mealiffe Dec., Exhibit J.

Despite the warning that Plaintiff received, he again proceeded to file frivolous material with the courts.  In the matter of *Plotzker v. Royce C. Lamberth, et al.*, United States District Court for the Western District of Virginia, Civil No. 3:08-cv-0027, the court found Plaintiff's filing in the case "frivolous, repetitive and without merit." 2008 U.S. Dist. LEXIS 86198, *40-41 (W.D. Va. Oct. 22, 2008) (a copy of the Order is also provided at Mealiffe Dec., Ex. L). Notably, the Western District of Virginia "repeat[ed] Judge Lamberth's warning to the plaintiff" as given in *Plotzker v. Am. Bd. of Urology.  Id.*

Plaintiff's status as a vexatious litigant is beyond doubt. Indeed, as has been acknowledged in this District, the act of filing suit against a judge who has dismissed a litigant's case, as Plaintiff has done in the past, is "a 'technique of . . . vexatious litigants.'"  *Jones v. Newman*, No. 98 Civ. 7460, 1999 U.S. Dist. LEXIS 10171, at *42-43 (S.D.N.Y. June 30, 1999) (quoting *In re Sassower*, 20 F.3d 42, 44-45 (2d Cir. 1994)). Moreover, Plaintiff has admitted that in the past he has withheld medical billing information in order to extract payment from employers. [Rule 56 Stat. at ¶ 14.] Plaintiff has also acknowledged that after his termination, but

24

notably before he filed his first written complaint with a government agency, he attempted to be "forceful" with Defendants in an attempt to extract information from them, by claiming that there were, otherwise unidentified, "persons interested" in both Defendants and their counsel. [Rule 56 Stat. at ¶ 83.]

Whether analyzed under U.S.C. § 3730 or Labor Law § 740, Plaintiff's act in bringing suit against Defendants is not only without basis in law and fact, but also frivolous and vexatious. For these reasons, Defendants respectfully request this court to order Plaintiff to pay their attorneys' fees and costs.

## Conclusion

For all the foregoing reasons, Defendants Kips Bay Endoscopy Center, LLC ("KBEC") and Kips Bay Anesthesia, P.C. respectfully request that this honorable Court: (1) Grant Defendants Summary Judgment as to all claims; and (2) Award Defendants their Attorneys' fees and costs pursuant to Labor Law § 740 or § 3730(g).

Dated: October 24, 2016

NIXON PEABODY LLP

By: ___/s/ Thomas Mealiffe_____
        Thomas M. Mealiffe, Esq.
        50 Jericho Quadrangle, Suite 300
        Jericho, New York 11753
        Tel: (516) 832-7597
        Fax: (516) 832-7555
        tmealiffe@nixonpeabody.com
        *Attorneys for Defendants*